# BURLINGAME *v.* MANCHESTER.

EQUITY; INJUNCTION; COURTS; PATENTS.

The supreme court of the District of Columbia, sitting as an equity court, has no jurisdiction to entertain a suit against former employees of the plaintiff to enjoin them from divulging the secrets of the plaintiff's invention acquired by them while in his employ, and for which he has filed an application for a patent, and from prosecuting an application which they have filed for a patent for the same invention, as the Commissioner of Patents is vested with full jurisdiction under the patent law to determine in an interference proceeding the questions involved, namely, who were the real inventors of the invention in question, and whether the defendants were the employees of the plaintiff for the purpose of carrying out his instructions in regard to the construction of the devices embodying the invention, and as an appeal will lie to this court from the decision of the Commissioner in such an interference. (Citing *Re Frasch*, 20 App. D. C. 298; *Moore* v. *Heany*, 34 App. D. C. 31, and *Billings* v. *Field*, 36 App. D. C. 16.)

No. 2739. Submitted February 2, 1915. Decided March 1, 1915.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia in a suit in equity, dismissing a bill for an injunction; the lower court, however, having restrained the defendants as prayed during the pendency of the appeal. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a suit in equity begun by Charles I. Burlingame, H. Oscar Huot, and George S. Engle, appellants, who are hereinafter called plaintiffs; against Arthur Manchester and Harry N. Spooner, appellees, hereinafter called defendants.

The suit is to restrain the defendants from filing or prosecuting applications in the Patent Office for certain claims, and

divulging secrets obtained by them from the plaintiffs, and also to prevent them from doing any acts to embarrass or hinder plaintiffs in the prosecution of their claims in the Patent Office.

The bill alleges that the said Engle for many years has been engaged in the making and perfecting of a certain invention for a primary electrical battery, which invention involves electro-chemistry, analytical chemistry, and chemical metallurgy, and that for seven years past has prosecuted his said inventions in the city of Cranston in the State of Rhode Island, and has expended thereon large sums of money, to wit, the sum of $32,000 in experimental work, the maintenance of a shop, hiring of mechanics, purchasing of materials, etc., incident to the prosecution and development of his said inventions.

That during five or more years past, defendant Spooner has been employed by Engle to assist the said Engle as a general assistant in the development of his said inventions, and that during the period that the said Spooner has been in the employ of Engle he has been fully paid and recompensed by the said Engle for the work done by him, and that the said Spooner has been taught by the said Engle some electrical knowledge, so as to enable him to set up and demonstrate parts of the said primary battery; and that all work and services performed by the said Spooner for the said Engle have been entirely under the direction of the said Engle as an assistant to the said Engle, and of an auxiliary and ancillary character, and have been a mere aid in the development of the original ideas of the said Engle; and that the defendant Manchester, who has some chemical knowledge, has been employed for the three months past to assist the said Engle in the thickening of a certain fluid used in his said inventions; and that all the materials used by either of the said defendants were provided by the said Engle; and that the said work performed by defendant Manchester was fully paid for by said Engle, and was wholly confined to the developing of the original ideas of the said Engle.

That in, to wit, the month of June, 1912, the said Spooner and the said Manchester, while in the employment of the said

Engle, respectively represented to Huot and to Burlingame that the said Engle was the sole owner of the primary battery and of ideas and inventions embodied in the same, and that the same were of great value and approaching a state of completion, and urged and persuaded the said Huot and the said Burlingame to advance large sums of money for the further carrying on of the work, and for the perfecting of the necessary patents upon the said inventions, and they further represented that the said Engle was a man of honesty of purpose, and reliable, and that they, the said Huot and Burlingame, would be perfectly safe in investing their money, and that the said Engle had applied for and been granted other patents, and was about to make further applications for further patents upon the same inventions; and that the said Huot and the said Burlingame, relying upon the statements aforesaid, that the said inventions were the sole property of the said Engle, did in fact invest large sums of money, to wit, the sum of $8,000 in the said inventions; and further the said Spooner witnessed a contract between the said Engle and the said Huot and Burlingame in the month of June, 1912, for the payment of $2,000 by the said Huot and the said Burlingame to said Engle on account of the said inventions; and that in the first week of the month of October last past, the said Engle, who had already applied for patents upon certain parts of the said battery, came to the city of Washington accompanied by the said Manchester, the expenses of the said Manchester being fully paid by the said Engle, and that the said Engle made three applications for further patents in connection with his said inventions, and that the said Manchester was present when the said Engle swore to the three applications in the presence of one Hyer, and nodded assent to the statement of Engle that he, the said Engle, was the sole owner of the said primary battery and all its parts, for the patents upon which the said three last named applications were made. The applications are numbered serially,—Serial No. 724,605; filed October 8, 1912, for primary batteries; Serial No. 724,606, filed October 8, 1912, for double copper oxide plate and process of produc-

ing same; and Serial No. 724,607, filed October 8, 1912, for process of making alkaline gelatinous electrolyte.

The plaintiffs further say that recently, to wit, in the present month, notwithstanding the facts hereinbefore set forth, all of which were well known to the said defendants and to each of them, they, the said defendants, corruptly and fraudulently conspired and agreed together to rob the said Engle of his inventions, and to claim the same for themselves; and they, the said defendants, corruptly and fraudulently conspired and agreed to defraud the said Huot and the said Burlingame of the money invested by them, the said Huot and Burlingame, in reliance upon the statements of the said defendants; and that, in pursuance of the said fraudulent and corrupt conspiracy, the said Manchester threatened the said Engle, in substance, that he, the said Manchester, would smash the said Engle's business, and prevent his ever doing anything with it, and the said Manchester further stated in the presence of the said Engle that in "Smashing his business," he, the said Manchester, would make public the secret of the said Engle's inventions, and would apply for patents for Spooner and himself thereon, if he could obtain the necessary money, and that he, the said Manchester, would thus cause delay and litigation in the allowance of the applications of the said Engle above referred to; and the said Manchester demanded for himself an interest in the said patents, and an interest in the said patents for Spooner, and in further pursuance of the corrupt conspiracy the said Manchester and the said Spooner called upon the said Huot and the said Burlingame together in Burlingame's office in the city of Providence, and demanded of them the sum of $1,000 for the purpose of obtaining patents in their own names upon the inventions of the said Engle, and the said defendants further threatened that if the said Huot and Burlingame refused the defendants the sum of $1,000, they, the said defendants, would cause the said Huot and Burlingame to lose the sum of $8,000 which they had invested in the said inventions upon the said representations of the defendants; and they further threatened that if they did not obtain the sum of $1,000 from

them, the said Huot and Burlingame, they, the said defendants, would procure the sum elsewhere, and that they would proceed to Washington and file applications in their own names for patents upon the inventions of the said Engle, as hereinbefore set forth; and that in further pursuance of the said corrupt and fraudulent conspiracy, the said defendants have in fact come to Washington, and are now in the city and District, for the purpose of filing in their own names applications for patents covering the inventions of the said Engle, and thereby to harass, annoy, and defeat the development of the said inventions of the said Engle, Huot, and Burlingame.

Plaintiffs further show that the said inventions of the said Engle of the primary battery are of very great value, and that the said battery is nearing a state of completion, and that the filing of the false and fraudulent applications of the defendants will prevent the plaintiffs from obtaining the necessary money to develop and complete the said inventions, and will cause a multiplicity of suits to determine the title to the said inventions, and will work irreparable injury to each of the three plaintiffs, and will destroy the value of the investments of the said Huot and Burlingame, made in the manner aforesaid; and that the defendants are wholly without means, and are financially irresponsible, and that the said plaintiffs are without remedy at law, and that the said plaintiffs Huot and Burlingame would have no status in the Patent Office to defend and prosecute their interests in the said inventions, and that all of the said plaintiffs, being advised of the corrupt and fraudulent conspiracy, are compelled to seek the relief of the equity court.

They pray for a temporary restraining order to issue enjoining each of the defendants from filing and prosecuting applications in the Patent Office for any claims to inventions set forth in the applications numbered 724,605, 724,606, and 724,-607, filed on October 8, 1912, and further enjoining them and each of them from divulging any secrets obtained from the plaintiffs, and further enjoining and restraining the said defendants, their agents, assigns, and attorneys, from doing acts

to embarrass or hinder the said plaintiffs in the prosecution of their said claims numbered as aforesaid, until further order of this honorable court; and that upon final hearing the said temporary restraining order be made permanent. And also a prayer for general relief.

On the same day the restraining order was issued as prayed and an injunction undertaking approved and filed.

Subpœnas for the defendants were returned not found.

January 20, 1913, counsel for defendants entered a special appearance for the purpose of moving to quash the subpœna, and to vacate and set aside the order directing the restraining order to issue.

On the same day, specially appearing by attorneys, they moved that the subpœna issued against the defendants be quashed, and, second, that the order directing the restraining order against them be vacated and set aside.

The court denied this motion January 31, 1913, and held that the motions therein are equivalent to a general appearance by the defendants; wherefore they were given ten days within which to plead.

Defendants answered denying the specific allegations of the bill, and specially denying that Engle had invented said battery, or that defendants had been employed by him to assist as general assistants, or had been paid by him, or had been taught any electrical knowledge by him, or that any work had been performed under the direction of said Engle, or that they had been engaged in the development of any original ideas of the said Engle.

They deny that they advised the said Huot and Burlingame to advance any sums of money for the further carrying on of the work, and for the perfecting of the necessary patents upon said inventions; and they deny that by any representations of theirs the said Huot and Burlingame made any advances to said Engle.

They admit that defendant Spooner witnessed a contract between the said Engle and the said Huot and Burlingame in the month of June, 1912, for the payment of $2,000 by said

Huot and Burlingame to said Engle, but deny that the said contract had relation to any invention of said Engle.

They admit that in or about the first week of October, 1912, the said Engle and the said Manchester went to the city of Washington, as in said bill of complaint alleged, but deny that the expenses of said Manchester on that occasion were fully paid for and borne by said Engle. They admit that on the occasion of the trip to Washington, said Engle made three applications for patents through James L. Norris, a patent attorney of the said city, and that in the presence of said Manchester said Engle swore to said three applications, same being those mentioned in the bill of complaint. They deny said Manchester ever assented to any statement of the said Engle that he, the said Engle, was the sole owner of the said primary battery or of any of its parts covered by the said three applications, or any one of them; and they particularly deny that in the office of Mr. Norris, where said three applications were prepared, the said Manchester, in the presence of one Hyer, nodded assent to the statement of said Engle that he, the said Engle, was the sole owner of the primary battery and all of its parts, set forth in said three applications; and they deny that at any time the said Manchester declared or admitted that the said Engle was the inventor of anything embodied in any of said applications.

They deny any disclosure of the subject-matter of either of the said three applications by the said Engle to them, or either of them.

They deny the charge of conspiracy to attempt to rob Engle of any of his inventions, or to defraud the said Huot and the said Burlingame of the money invested by them. They deny that they threatened to smash the said Engle's business, or that the said Manchester would make public the secrets of the inventions of said Engle, or would apply for patents in the name of defendant Spooner and himself thereon, or that he would cause delay and litigation in the allowance of the patent to said Engle. They deny that defendant Manchester

demanded from said Engle for himself and Spooner an interest in any patents to be secured by said Engle.

They say that they have jointly and severally been associated with the said Engle in the development of certain inventions of their own in which the said Engle has taken no inventive part, and because of the association of these defendants with said Engle in the development of the said inventions of these defendants, the said Engle has presumed not only to be the sole owner of said inventions, but the sole inventor of them, and has filed in the United States Patent Office, in his own name, the three applications covering the said inventions set forth in the bill of complaint. They further say that while it was known to them, the said defendants, that the said Engle was to apply for patents for the said inventions, they thought, being then ignorant of the patent laws and of the rights and duties of inventors thereunder, that such procedure was proper in view of the community of interests that they and the said Engle had in said inventions; and it was not until after the said applications had been thus filed by said Engle in his own name that they discovered that valid patents could not be granted upon said inventions except upon applications made in the names of the true inventors; whereupon, and before the filing of the bill of complaint in this cause, they caused to be prepared and filed in their own names an application for patent covering the said inventions included in the said three applications filed by said Engle, the said application filed by these defendants being known and designated as Serial No. 736,969, and filed in the Patent Office of the United States on the 16th day of December, 1912, and being entitled "An Improvement in Batteries."

Testimony was taken in the case, and on final hearing, November 7, 1913, a decree was rendered dismissing the bill at plaintiffs' cost. It was also ordered that during the pendency of the appeal, and until the determination of the questions presented thereby, the defendants be and are hereby restrained from divulging otherwise than in the prosecution of their claims for letters patent, any secrets obtained from the plaintiffs herein,

and the defendants are further restrained from doing any act to embarrass or hinder the plaintiffs otherwise than aforesaid.

This appeal is taken by plaintiffs from that decree.

*Mr. Henry E. Davis, Mr. F. Edward Mutchell,* and *Mr. John Ridout* for the appellants.

*Mr. Melville Church* and *Mr. W. C. Sullivan* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Evidence taken by plaintiffs tends to show that defendants Manchester and Spooner were employees of Engle to carry out and develop his inventive ideas. This is contradicted by them, and their claim is that they were partners of Engle in developing a new battery, and that the means were not disclosed by him, but discovered by them.

Engle refused to disclose the particular invention claimed by him, and directed his witnesses to refrain from disclosing the same when their depositions were taken. It is unimportant to analyze or review this evidence as the case turns upon the question of jurisdiction of the equity court. The Patent Office is a special and important department of the United States government, established by act of Congress under the Constitution, and the functions of the Commissioner are in great measure judicial.

At the time this bill was filed there were applications of the respective parties pending in that Office. If these disclose patentable inventions, the Commissioner is vested with full jurisdiction in an interference proceeding to determine the very question here involved.

The jurisdiction of this court over the Patent Office is appellate, and is confined to two classes of cases; first, where an application for a patent has been finally denied; second, when,

in an interference case, priority of invention has been finally awarded. *Re Frasch,* 20 App. D. C. 298, 301.

The courts are invested with no power to interfere with or supervise the operation of the Office. *Moore* v. *Heany,* 34 App. D. C. 31.

It is true that sec. 4915, Revised Statutes, Comp. Stat. 1913, sec. 9460, confers jurisdiction in equity to entertain a bill after a final decision of the Commissioner to compel him to issue a patent, but this jurisdiction is limited to the case specified.

As said by Mr. Justice Robb in *Billings* v. *Field,* 36 App. D. C. 16, 24, 25: "This situation demonstrates the futility of interference by a court having no general jurisdiction or control over the affairs of the Patent Office, with the regular and orderly trial of cases in that office, when the very questions raised in that court may be quite as expeditiously raised by appeal. Such a practice, if established, would still further complicate rather than simplify patent practice, and, we feel sure, add to the burdens of applicants, and delay instead of expedite final action. * * * The statute has conferred jurisdiction upon this court to hear and determine appeals from the Patent Office. The only excuse, therefore, for invoking this common-law remedy, is that relief by appeal will be less efficient. We are fully convinced that an appeal will afford fully as speedy and adequate redress as will be accomplished by certiorari. If proceedings in the Patent Office are to be interrupted by certiorari when there is an equally adequate remedy by appeal, it is clear that an additional tribunal not contemplated by the statute, namely, the supreme court of the District, will be interposed between the tribunals of the Patent Office and this court." See also *Moore* v. *Heany,* 34 App. D. C. 31.

It is clear, therefore, that the procedure of the Patent Office is ample and effective for the purpose of determining every issue raised in this case. It is the duty of the Patent Commissioner to determine from the evidence whether or not Engle was the real inventor of the battery in controversy, and that

Manchester and Spooner were simply his employees for the purpose of carrying out his instructions in regard to the construction of the same.

From the decision an appeal lies directly to this court. There is nothing, therefore, to justify our interference with the proceedings in the Patent Office, which already has jurisdiction of the case.

This conclusion was arrived at by the appellate division of the supreme court of New York in a case where the bill sought to restrain a party from filing an application in the Patent Office for a patent for the same invention for which the plaintiff had filed a previous application. It was held that the court had no jurisdiction because the matter was within the exclusive jurisdiction of the Patent Office, and dismissed the bill. *Griffith* v. *Dodgson,* 103 App. Div. 542, 546, 93 N. Y. Supp. 155.

The court did not err in dismissing the bill, and the decree is affirmed with costs.                *Affirmed.*

An application for the allowance of an appeal to the Supreme Court of the United States was denied March 8, 1915.