MARGARETTA SULLIVAN, Also Known as MARGARETTA GRIEM, Plaintiff, *v.* WILLIAM P. SULLIVAN and HENRY SCHAFER, Defendants.

Supreme Court, Kings Special Term, December, 1923.

**Husband and wife — divorce — when divorce, granted to wife in another state, defeats her right of action in equity to set aside conveyance made by former husband and for admeasurement of dower.**

Plaintiff and one to whom she was married in this state in 1882 resided therein for about seven years though she testified that she never lived with her husband "as his wife." In defiance of a decree of divorce granted to him in this state in 1891 by which she was prohibited from marrying again so long as he lived, she in 1891 was married in this state to one G. who died in 1903, and three years later, in this state she married the defendant and after securing from him a deed of the real property in question here, informed him of the true situation and that she was not his wife. Subsequently they were legally married in the state of New Jersey and she reconveyed the property to him. Later and after she had secured a foreign decree of divorce from defendant on grounds that the courts of the state of New York do not consider sufficient, she returned to this state and waiting until defendant, believing that he was free, conveyed said real property, she commenced the present action. *Held,* that plaintiff by her acts in relation to said property and her violation of the laws of this state and the decree of divorce granted therein to her first husband had forfeited any right to appeal to a court of equity, and in an action to set aside the conveyance made by defendant and for the admeasurement of dower, judgment will be directed for the defendant.

ACTION to set aside deed and for admeasurement of dower.

*Louis A. Brown,* for plaintiff.

*Prentiss & Moore (Evarts L. Prentiss,* of counsel), for defendant William P. Sullivan.

*Corner, Bell, Russell & McNulty (Clarence F. Corner,* of counsel), for defendant Henry Schafer.

DIKE, J. This is an action to set aside a deed made by William P. Sullivan to the defendant Schafer of property situated in the borough of Brooklyn, city of New York, said deed being dated the 19th day of November, 1919, and duly recorded in the county of Kings. In that deed William P. Sullivan described himself as being unmarried. The chronology of events is interesting, as well as important. On November 2, 1882, plaintiff intermarried with one John Dill, Jr., at the then city of Brooklyn, N. Y., where they afterwards resided until December, 1889. Plaintiff, however, testified that she never lived with Dill "as his wife." In November, 1891, a decree of divorce was granted to Dill from this plaintiff, who, under the decree, was prohibited from marrying again so long as John Dill, Jr., lived. In that action one Henry Griem was named as corespondent. In December, 1891, the plaintiff

herein married the said Griem in the state of New York. Griem died in 1903. In October, 1906, the plaintiff herein married William P. Sullivan, one of the defendants herein, in the borough of Brooklyn, city of New York. At this time Dill was still alive. It would appear that Sullivan did not know of the Dill divorce. On October 30, 1906, after marrying plaintiff, defendant Sullivan conveyed the real estate in question to the plaintiff herein. In January, 1908, the plaintiff informed the defendant Sullivan of her previous divorce and that she was not his wife, and a few days later, on the 31st day of January, 1908, in Jersey City, state of New Jersey, a marriage ceremony was performed between this plaintiff and defendant Sullivan. After the New Jersey ceremony, the plaintiff conveyed the property in Brooklyn to her husband, defendant Sullivan, by deed dated January 25, 1908. In 1910 the defendant Sullivan made an abortive attempt to establish a residence in Colorado and sought there to secure a decree of divorce from this plaintiff. This action was dismissed on the ground that Sullivan was not a resident of Colorado, the court thus failing to have jurisdiction. Subsequently this plaintiff went to Colorado and established, evidently, her legal residence, and in January, 1914, procured a divorce from the defendant William P. Sullivan, upon the ground of non-support. This decree of divorce is of the marriage between these two performed in Jersey City, N. J. In the Colorado decree, paragraph 1 of her complaint, Margaretta Sullivan alleges " that she is now and has been a *bona fide* resident and citizen of the County of El Paso and State of Colorado for the period of more than one year prior to the commencement of this action." It appears that Sullivan was not personally served with process in that action, in the state of Colorado, but was so served in the state of New York. This would be tantamount to service by publication. The decree of divorce of the Colorado court, among other things, adjudged " it is therefore ordered, adjudged and decreed by the court that the bonds of matrimony heretofore and now existing between the said plaintiff, Margaretta Sullivan, and the said defendant, William P. Sullivan, be and the same are hereby dissolved and that said parties are and each of them is freed and absolutely released therefrom and that all and every duty, rights and claims accruing to either of said parties by reason of said marriage shall henceforth cease and determine." The sole question to be determined in this application of the plaintiff to a court of equity is as to whether she has forfeited her dower in the property in question by reason of the decree in Colorado. The case of *Van Blaricum* v. *Larson*, 205 N. Y. 355, is peculiarly in point upon the general proposition developed in this case. There

the plaintiff brought an action for the admeasurement of her dower, and the question came to the Court of Appeals upon a demurrer to the complaint and a certified question for review. The question passed upon was whether a divorce *a vinculo matrimonii*, which the plaintiff obtained in the state of Indiana, barred her right to claim dower in land in New York state of her former husband, she having been divorced in the state of Indiana from Larson, upon the grounds of desertion, failure to support, etc., they having been married in the state of Indiana. It is well settled in this state that a woman need not be a widow in order that she may be endowed of her husband's lands. *Wait* v. *Wait*, 4 N. Y. 95. So the plaintiff herein is justified in that respect, in bringing the action in the instant case. Gray, J. (p. 359), writing in the *Van Blaricum Case, supra*, says: " The statute of dower provided for her disendowment as follows: ' In case of a divorce, dissolving the marriage contract for the misconduct of the wife, she shall not be endowed.' (1 R. S. 741, sec. 8; Real Prop. Law, sec. 196.) The provision is significant. The wife's title, or right, of dower in lands, which is the creation of the statute and which becomes inchoate upon marriage and seizin in the husband, the statute deprives her of, only, when the marriage contract has been dissolved for her misconduct. Impliedly, therefore, she cannot be deprived of it, involuntarily, except it is forfeited under those conditions." And later on (p. 360): " These provisions give practical effect to the statute of dower, by preserving the wife's inchoate right, upon a divorce *a vinculo*, unless decreed at the suit of her husband." The *Van Blaricum* case holds that the right of the plaintiff to dower in lands in New York state was to be determined by the courts of New York state, and further holds that the existing right of dower of plaintiff was not forfeited by the divorce in Indiana, although the relation of husband and wife was destroyed by the decree of divorce in the Indiana court. In the case of *Starbuck* v. *Starbuck*, 173 N. Y. 503, where the wife procured a judgment of divorce within the state of Massachusetts, on the ground of a husband's cruelty, the courts of New York denied her right to recover dower, but that was as to real estate which was acquired by her former husband after the decree. The case of *Bell* v. *Little*, 204 App. Div. 235, discusses some of the cases above cited, although the facts in the *Bell* case differ from the case at bar in some jurisdictional matters. The case of *Bell* v. *Little* has just been affirmed by the Court of Appeals, so that it would clearly appear to me that this plaintiff, under the rule laid down in the *Van Blaricum* case, and others cited, would be justified in bringing the action that she has for the admeasurement of dower and should

succeed, unless there are peculiar reasons which should appeal to a court of equity and destroy this right. Is there any evidence in this case that would so strongly appeal to the conscience of a court of equity as to deny her this right? The evidence discloses the marriage of this plaintiff in 1882 with John Dill, Jr., and that in this state in 1891 a decree of divorce was granted to her husband for her adultery and in that decree she was prohibited by this court, to which she now appeals, from marrying again as long as John Dill, Jr., lived; that this plaintiff married one Griem in December, 1891, the corespondent, in this state, thereby defying the provisions of the decree granted in her husband's suit of divorce, and at that time John Dill, Jr., was alive. It appears that Griem died in 1903, and three years later this plaintiff married the defendant William P. Sullivan. She married him in the city of New York, and again she offended wittingly the decree entered in the divorce action of her first husband. She deceived Sullivan, and it was not a marriage. It was a fraud upon her part toward the defendant Sullivan. It is at this time that the land which she now seeks dower in comes to the fore. For some reason she secured a deed from her husband to her of this very property in question in the instant suit and then informed him of the true situation and that she was not his wife; that there was no legal marriage, and thereafter plaintiff and defendant Sullivan went to Jersey City, where a marriage ceremony was performed, then returning to Brooklyn. It is true that she was then legally married to Sullivan, the defendant herein, but shortly afterwards she sought to be released from the bonds of matrimony by seeking a residence, obviously for the purpose of a divorce, in another state, upon grounds that the courts of this state did not consider sufficient upon which to grant a decree of absolute divorce. Immediately after securing that decree she returns to this state and waits until the defendant Sullivan, believing that he was free, sought to transfer the property in question, when she makes this application to this court of equity. Can this plaintiff, who has brazenly flaunted, on two occasions, the laws of this state of New York, and on one occasion has, with equal effrontery, made of the decree of this very court wherein she now seeks relief a scrap of paper, now ask for the admeasurement of her dower? The case of *Kaufman* v. *Kaufman*, 177 App. Div. 162, is of interest because of inequitable acts by the plaintiff in that case, and because of such acts plaintiff was refused the relief of annulment, citing therein the case of *Stokes* v. *Stokes*, 198 N. Y. 301, wherein the court expressly recognizes that there may be extreme cases in which courts of equity may take cognizance of peculiar circumstances, and, as

I read it, would suspend or render those rights. An exceedingly well-considered case that supports the contention of the defendant Sullivan here is the case of *Monroe County Sav. Bank* v. *Yeoman*, 195 N. Y. Supp. 531. Mr. Justice Stephens reviews the supporting cases and, on page 533, says: " We have for the background of our inquiry the settled doctrines that a widow shall be endowed of a one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, and that as a punishment for wrongdoing she shall not be endowed in case of a divorce dissolving the marriage contract for her misconduct (*In re Estate of Ensign*, 103 N. Y. 284); that the misconduct of the wife referred to is her adultery; that her right is unaffected by a decree of divorce for her husband's adultery; that the right of dower in lands in the state of New York is to be determined by the laws of this state; that the inchoate right of dower is a vested right; that the widow is not entitled to dower of any land acquired by her deceased husband subsequent to a decree of divorce." In *Voke* v. *Platt*, 48 Misc. Rep. 273, 277, a wife was denied dower and it was held " That a woman who obtains in a foreign state a judgment of divorce *a vinculo* against her husband, who is a resident of New York, upon a ground not sufficient to justify such a divorce in this state, cannot, after the death of such husband, claim dower in his real estate situated here." See *Starbuck* v. *Starbuck*, *supra*. But the case of *Monroe County Sav. Bank* v. *Yeoman*, *supra*, is a direct authority against the relief asked for by the plaintiff herein and the careful reasoning in that case would support the defendant Sullivan's contention, unless overruled by the case of *Bell* v. *Little*, *supra*. In any event does this plaintiff qualify as an appealing petitioner under the provisions of that beneficent axiom of equity which requires proof of her own worthiness before she may be given such relief? Does she come with clean hands? " The complainant is first judged, and not until he has been found free from taint does equity proceed to determine whether or not he has been wronged." *Fay* v. *Lambourne*, 124 App. Div. 245. The plaintiff's record in this case as set forth above seems to me clearly to bar her from any relief. The king's soliloquy in Hamlet occurs to me: " May one be pardoned and retain the offence." Judged by her acts in relation to this property and her violation of the laws of this state and the decree of this court, I feel she has forfeited her right now to appeal to a court of equity to secure her dower right in this property and I, therefore, d rect judgment for the defendants herein.

Judgment accordingly.